UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| The Devol Pond Association, a community group and 501(c)(3), et al. | ) Case No.: |
| | ) |
| | ) Complaint |
| Plaintiffs, | ) |
| vs. | ) |
| | ) |
| Christopher Capone, et al., | ) |
| Defendant(s) | ) |
| | ) |
| | ) |

:

     Can relief from ongoing civil rights violations still be safely sought in federal courts? Are individual town employees still prohibited from stealing land and money for themselves and their family members, even if they claim to be acting in an official capacity? Can attorneys and law firms representing a town receive tax dollars to assert a private property interest for an individual town employee and his family members? If county court processes are abused, and a county court fails to follow procedural and substantive law, may individuals seek redress and defend their Constitutional rights in federal courts? If attorneys conspire with clients and submit perjurious testimony, fabricate evidence, and commit other acts of fraud on the court, is redress available in federal courts, and will the court investigate to defend and safeguard the integrity of the judiciary?

     Plaintiffs pray the answer to these questions are yes.

     Plaintiffs herein seek redress from the recent acts of violence, abuse, and fraud committed in furtherance of a recently discovered racketeering scheme aimed at wrongly obtaining property and money from Plaintiffs.

This action specifically is brought to address ongoing harm, acts of violence by Defendants, and fraud on the court which occurred in recent weeks and months. Plaintiffs urgently pray for redress, including injunctive relief and a restraining order to prevent the ongoing, increasingly sever acts of violence, harassment, and stalking of Plaintiffs and their guests at Plaintiffs home, and ongoing abuse of the judicial system.

I.        THE PARTIES

1. Plaintiff, the Devol Pond Association, ("DPA") a community group and 501(c)(3), with a mailing address of 246 Durfee St., Fall River, MA 02720.

2. Plaintiff the 2021 Hadley Family Real Estate Trust, a Massachusetts Trust, with a mailing address of 246 Durfee Street, Fall River, MA 02720.

3. Plaintiff the Estate of Mildred M. Hadley ("Estate of Mimi") through its personal representative Robert C. Hadley having a mailing address of 246 Durfee Street, Fall River, MA 02720.

4. Plaintiff Laura A. Hadley, ("L. Hadley") individually and in her capacity as a trustee of the 2021 Hadley Family Real Estate Trust, with a mailing address of P.O. Box 4021, Westport MA, 02790.

5. Plaintiff the Estate of the late Robert C. Hadley ("Estate of late Robert C. Hadley") through its personal representative Robert C. Hadley having a mailing address of 246 Durfee Street, Fall River, MA 02720.

6. Plaintiff Robert C. Hadley, ("R. Hadley") individually and in his capacity as trustee of the 2021 Hadley Family Real Estate Trust with a mailing address of 246 Durfee Street, Fall River, MA.

7. Plaintiff Jane Does, members of the DPA with ancient deed chains, including waters, whose identities are known and unknown, members of the Hadley family and beneficiaries of the 2021 Hadley Family Real Estate Trust, whose identities shall

remain confidential for their safety; collectively with the DPA, R. Hadley and L. Hadley hereafter referred to as "Plaintiffs/the Hadley's/DPA/Jane Does" or "Plaintiffs/the Hadley's" for simplicity sake.

8. Plaintiff Jana Does, unknown owners of yet to be ascertained water and land rights, co-owners of the Greater Watuppa Ponds Watershed and Adamsville Brook Watershed whose chains of title also derive from conveyances to the Original Proprietors and ancient deed chains which included littoral and riparian rights, collectively included with other Plaintiffs, hereinafter referred to as "Plaintiffs".

9. Defendant Christopher Capone, individually, ("C. Capone"), and in his capacity as Westport Conservation Commission Agent (hereinafter "A. Capone"), resides at 49 Doherty Avenue, Somerset, MA.

10. Defendant Karen Tripp Martin ("K.T. Martin"), individually, in her capacity as a real estate broker or agent, as trustee for the Karen Martin Nominee Trust, u/t/d May 18, 2010, et al., resides at 51 Amory Petty Way, Westport, MA, although the ownership and jurisdiction of the 'parcels' is disputed.

11. Defendant Dean Martin ("D. Martin"), individually and his capacity as trustee, resides at 51 Amory Petty Way, Westport, MA, although the ownership, size, and jurisdictions of the 'parcels' are in question.

12. Defendant Brian J. Tripp ("B. Tripp"), an individual, resides at 115 Narrow Ave., Westport, MA, although the ownership, jurisdiction, and size of the parcel are in question.

13. Defendant Pamela Wilkinson ("P. Wilkinson"), an individual, upon information and belief, owns and resides at 540 Weetamoe Street, Fall River, MA.

14. Defendant Mary Lou Quigley ("M.L. Quigley"), an individual, resides at 955 Almy Road, Somerset, Massachusetts.

15. Defendant Deborah Dietz ("D. Dietz") an individual currently residing in a structure on Plaintiffs property at 1 Narrow Ave., located in Westport, MA, Tiverton, RI, et al.

16. Defendant, The Town of Westport, is a town located in the Commonwealth of Massachusetts, having its principal place of business at 816 Main Road, Westport, MA 02790.

17. Defendant, The Westport Conservation Commission, (the "ConCom") is a town agency and seven member board appointed by town Selectmen, having its principle place of business at 856 Main Road, Westport, MA 02790.

18. Defendant Massachusetts Department of Conservation and Recreation ("DCR") is a state agency with its principal place of business located at 10 Park Plaza, Suite 6620, Boston, Massachusetts 02116.

19. Defendant Massachusetts Department of Environmental Protection ("DEP") is a state agency with its principal place of business located at 100 Cambridge Street Suite 900, Boston, MA 02114.

20. Defendant Commonwealth of Massachusetts ("Commonwealth" or "MA") is a state in the United States of America; the Attorney Generals Office is located at One Ashburton Plaza, 20th Floor, Boston, MA 02108.

21. Defendant Attorney Justin Amos ("Attorney Amos"), an attorney and individual with a principal place of business at Pierce Davis Perritano, LLP, 10 Post Office Square, Suite 1100N, Boston, MA 02108.

22. Defendant Attorney David Cloherty ("Attorney Cloherty"), upon information and belief, an attorney and individual with a principal place of business at Pierce Davis Perritano, LLP, 10 Post Office Square, Suite 1100N, Boston, MA 02108.

23. Defendant Attorney John Davis ("Attorney Davis"), upon information and belief, an attorney and individual with a principal place of business at Pierce Davis Perritano, LLP, 10 Post Office Square, Suite 1100N, Boston, MA 02108.

24. Pierce Davis & Perritano LLP, ("PDP" or "Defendant Law Firm") a limited liability partnership with a principal place of business at 10 Post Office Square, Suite 1100N, Boston, MA 02108.

25. Defendant Paul Revere III, an attorney and individual having his principal place of business at 226 River View Lane, Centerville, MA 02632.

26. Defendant Dean Martin ("D. Martin"), individually and his capacity as trustee, resides at 51 Amory Petty Way, Westport, MA, although the ownership, size, and jurisdictions of the 'parcels' are disputed.

27. Defendant Dani LaFarrier ("D. Lafarrier"), an individual, upon information and belief resides at 317 Tuttle Street, Fall River, MA.

28. Defendant Geraldine Tripp ("G. Tripp"), an individual, resides at 187 Narrow Ave., Westport, MA, although the ownership, size, and jurisdiction of the parcel is disputed.

29. Upon information and belief, Defendant Christine Mulrooney ("C. Mulrooney") owns and resides at 955 Almy Road, Somerset, Massachusetts.

30. Upon information and belief, Defendant James Mulrooney ("J. Mulrooney") owns and resides at 53 Touisset Avenue, Swansea, Massachusetts.

31. Upon information and belief, Defendant Cara Romano ("C. Romano") owns and resides at 124 Spruce Street, Somerset, Massachusetts.

32. Michael Perry, ("M. Perry") an individual and in his capacity as trustee of the Elizabeth Q. Perry Trust -2009, resides at 592 Sodom Road, although the size and ownership is disputed.

33. Elizabeth Perry, ("E. Perry") individually and in her capacity as Trustee of the Elizabeth Q Perry Trust –2009, resides at 592 Sodom Road, Westport, MA, although the size and ownership of this parcel is disputed.

## II.    JURISDICTION AND VENUE

34.   This Court has subject matter jurisdiction as this case involves violations of
      Plaintiffs Constitutional Rights guaranteed under the Fifth and Fourteenth
      Amendments, and intentional deprivation of Plaintiffs/the Hadley's Civil Rights First,
      Eighth, and Fourteenth Amendment Rights in violation of 42 U.S.C. §§ 1983, and
      1988, as they are Constitutional claims.

35.   This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 as this
      action seeks redress from Defendants violation of Plaintiffs constitutional rights, and
      violations of federal law.

36.   This Court has original subject-matter jurisdiction pursuant to 18 U.S.C. § 1964(c)
      as a federal question, 18 U.S.C. § 1952, et seq., and 28 U.S.C. § 1331 because this
      action arises, in part, under the Federal Racketeer Influenced and Corrupt
      Organizations Act ("RICO").

37.   Venue is proper in this district pursuant to 18 U.S. Code § 1343 because Defendants
      devised or intending to devise any scheme or artifice to defraud, or for obtaining
      money or property by means of false or fraudulent pretenses, representations, or
      promises, transmissions by means of wire, radio, or television communication in
      interstate or foreign commerce.

38.   This Court has jurisdiction pursuant to 18 U.S. Code § 1343 because Defendants
      have, directly or indirectly, made use of the means or instrumentalities of interstate
      commerce, of the mails, in connection with the transactions, acts, practices and
      courses of business alleged in this Complaint.

39.   Venue is proper in this district pursuant to 28 U.S. Code § 1331 because this action
      arises under the Constitution, federal law, Clean Water Act, the Migratory Bird Treaty

Act of 1918, and involve real property and water rights in Massachusetts and Rhode Island.

40. This Court has jurisdiction over Plaintiff's related state and common law claims pursuant to the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

41. This Court further has personal jurisdiction over Parties under 28 U.S.C. § 1965(b) because any action brought pursuant to RICO statutes may be brought in a U.S. District Court, and the "ends of justice require" it.

42. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

43. Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each defendant is found and/or transacts his affairs in this District given each defendant's participation in the Fraud Enterprise as further described herein.

44. Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(c)(3) or the alien-venue rule as codified in Federal question: The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

III.    BACKGROUND FACTS COMMON TO ALL COUNTS

45. In 2018, Defendant Christopher J. Capone (hereinafter "CJCapone") wrongly entered Plaintiffs property by opening their gate, traveling down their driveway, and seizing Plaintiffs personal property; he disposed of Plaintiffs personal property in the Twon dumpster, purporting to act in his official capacity as a town administrative employee.

46. Upon information and belief, Christopher J. Capone is currently employed by both the Town of Westport Conservation Commission, DCR, and is separately employed as a consultant reporting to himself in his capacity as a town employee and as a state employee.

47. Neither CJCapone nor any other town or state official notified or contacted Plaintiffs before CJCapone unlawfully searched and seized Plaintiffs property in 2018.

48. Instead, CJCapone sent via email/interstate wires an 'Enforcement Order'("EO") which he drafted after his unconstitutional, illegal search and seizure; the EO was emailed by CJCapone to Plaintiffs Robert Hadley listing an alleged violation of the wetlands protection act at "1K Narrow Ave."/"64-9", with property owner listed as Robert Hadley.

49. It was signed by Town of Westport Conservation Commission Chair Paul Joncas, who upon information and belief is also employed by DCR.

50. By signing the EO, Defendant Joncas, working in agreement with CJCapone, toward unlawful purpose and sought to legitimize CJCapone's theft after CJCapone disposed of Plaintiffs personal property in the town dumpster.

51. One week later, on August 14, 2018, the Westport Conservation Commission by and through its members held a hearing and unanimously ratified CJCapone's theft and Enforcement Order.

52. Plaintiffs were not notified of the hearing.

53. Plaintiffs filed a limited administrative appeal pursuant to M.G.L. 249 § 4, governed under the procedure set forth in Standing Order 1-96 which requires judgment as a matter of law based on a closed administrative record in MA state court; Plaintiffs

sought $3,684.85 in property damage and attorney fees and costs they were forced to incur defending their basic Constitutional Rights guaranteed under the 1st, 4th, 5th, and 14th Amendments to the United States Constitution, and pursuant to 42 U.S.C. §§ 1983, 1988.

54.  The Bristol County Superior Court entered three orders on July 12, 2020 holding Defendant ConCom and Town liable for civil rights violations under the 14th amendment and ordering Defendants to pay Plaintiffs $74,399 in attorneys fees and costs pursuant to 42 U.S.C. § 1988.

55. Defendants appealed to the Single Justice of the MA Appeals Court, and the orders were upheld except to the extent that they required immediate payment of the attorney's fees and costs to Plaintiffs by Defendants.

56. CJCapone was held personally liable for the intentional tort of conversion; conversion damages and trespass liability were not decided in those orders.

57. The limited appeal remains pending in MA Court of Appeals, and to date, Plaintiffs have been forced to incur more than $435,000 in attorney fees and costs in that action alone—not including interest.

58. After the orders were entered, Defendants PDP, Cloherty, Davis, Commonwealth, and Town began misusing the judicial process to harass Plaintiffs and for the unlawful purpose of attempting to re-litigate property rights, including littoral and riparian rights, which remain under the controlling precedent of <u>Watuppa Reservoir Co. v. Fall River</u> ("Watuppa III"), 28 N.E. 257 (Mass. 1891), and now seeking to morph an administrative appeal into a quiet title action for an individual town employee and his siblings.

59. Plaintiffs have come to realize that the judicial process has been, and continues to be abused, and that Defendants, including CJCapone, Wilkinson and others continue to work in agreement with Defendant Attorneys and Law Firm Defendants to further misuse tax dollars from residents of Westport, MA to wrongly pay for legal counsel to defend CJCapone's theft in 2018, and to try to wrongly obtain more money and property from Plaintiffs and other tax payers in Westport by misusing and abusing the judicial system.

60. Plaintiffs commenced a comprehensive title search of their property beginning in late 2020 and discovered that CJCapone, members of his family including the Wilkinsons, Mulrooneys, and other co-conspirators including K. Tripp Martin, D. Dietz, M. and E. Perry, and other Defendants have been and continue to knowingly and intentionally forge deeds and subdivide and sell property they do not own.

61. CJCapone, ConCom, DEP, DCR, and others have and continue to approve Orders of Conditions for individuals to build houses, cut down trees, pollute water, and destroy property they do not own.[1]

62. Defendant Law Firm Pierce Davis Perritano LLP has and continues to wrongly receive and invest hundreds of thousands of dollars from the Town of Westport's municipal liability insurance carrier MIAA to defend CJCapone's theft in 2018, assert a real property interest for CJCapone and his siblings which CJCapone previously aadmitted was owned by Plaintiffs; the amount of money wrongly obtained in furtherance of the ongoing scheme is unknown as Defendant Town and others

---

[1] Orders of conditions and related application and documents are in the sole and exclusive possession of Defendants, and accordingly, Plaintiffs require preliminary Second-Look discovery and the ability to amend this Complaint to include specific details contained in that evidence.

repeatedly refuse to comply with public records requests and subpoenas seeking insurance loss run reports which are public records.

63. Liability insurance is intended to provide a financial safeguard for the town and its employees acting within the scope of their employment from liability associated with accidents, et al.

64. Municipal liability insurance is not intended to provide tax-payer funded legal counsel for individual town employees seeking to wrongly obtain property for themselves and their siblings via acts of violence and color of law.

65. Defendant Attorneys Davis, Cloherty, Amos, and Defendant Law Firm knowingly and intentionally continue to harass Plaintiffs, and willfully abuse the judicial process in furtherance of the recently discovered ongoing scheme in furtherance of the unlawful enterprise.

66. The recently discovered scheme and ongoing pattern of racketeering includes Defendant CJCapone and other Defendants and co-conspirators actively abusing the judicial process to harass Plaintiffs and to wrongly obtain money and property from Plaintiffs, including seeking to morph the limited administrative appeal for CJCapone's theft and destruction of Plaintiffs property in 2018 into a quiet title action for CJCapone, the individual and his siblings, and other co-conspirators, et al.

67. Plaintiffs brought an action in Federal District Court of Massachusetts in May of 2023 after discovering the ongoing, open-ended scheme in furthetrance of the ongoing enterprise ConCom and CCC whereby Defendants individually and working in agreement continue taking affirmative acts in furtherance of their attempt to

wrongfully obtain property and money from Plaintiffs by racketeering, mail and wire fraud, extortion, and other RICO predicate acts, as described more fully herein.

68. After the filing of Plaintiffs original Complaint, CJCapone, Conservation Commission Members, DCR, and DEP approved Orders of Conditions to allow individuals and entities to build houses on Plaintiffs property.

69. Plaintiffs sought leave to amend the 121-page complaint to include the additional acts of racketeering and CJCapone, Joncas, Town of Westport, and Conservation Commissions ongoing pattern of receiving money in exchange for granting property rights to individuals and entities who do not and did not have any property rights.

70. On September 22, 2023, CJCapone, acting in an individual or official capacity dug by hand under and around Plaintiffs bedroom window, in furtherance of the ongoing unlawful scheme to wrongfully obtain property by force.

71. Plaintiffs called Defendant Town of Westport Police Department; they refused to intervene, and withheld police reports and body camera footage for more than 1.5 years to conceal the ongoing fraud and extortion scheme; this week, Plaintiffs received a police report from one of Officer Fernandes; a police report from Officer Oliver who interviewed CJCapone was intentionally omitted.

72. In October of 2023, the MA District Court (Joun, J.) entered an order directing Plaintiffs to file a revised Complaint, not to exceed 50 pages.

73. The day the 50-page complaint was due, on November 3, 2023, CJCapone commenced excavating under and around Plaintiffs home, upon information and belief, using a town owned backhoe while purporting to assert a property interest for himself individually and his siblings.

74. Plaintiffs again called Defendant Town of Westport Police Department, who again refused to intervene; despite public records requests and appeals in 2023 and 2024, and subpoenas served to Town Police Department in 2024 in 23-cv-11042 and 24-cv-10520, Defendant Town of Westport continues to conceal this evidence, in furtherance of the ongoing, unlawful scheme.

75. Plaintiffs were forced to file a second action seeking redress from the ongoing harm, escalating acts of violence, and other RICO predicate acts.

76. Plaintiffs also moved for leave to amend their original Complaint in 23-cv-11042 to combine the two overlapping matters in the interest of judicial economy; and in an abundance of caution also served all Defendants with the second Complaint and summons in 24-cv-10520.

77. Plaintiffs incorrectly believed that the county and state courts would eventually adhere to the rules of substantive and procedural law in the Admin Appeal.

78. In February of 2024, CJCapone stated that he was working in agreement with Defendant D. Dietz to stalk Plaintiffs; specifically explaining to an unknown third party that when Plaintiffs arrive at their property at 1 Narrow Ave., D. Dietz contacts CJCapone who then arrives to engage in conduct intended to cause Plaintiffs to feel terrorized, frightened, intimidated, or threatened, through overtly hostile conduct including but not limited to wielding chainsaws, destroying trees on Plaintiffs Property, lurking around Plaintiffs home, sitting and leering at Plaintiffs for extended periods of time, and blocking their ingress and egress for the purpose of harassing and intimidating Plaintiffs.

79. The ongoing stalking by D. Dietz, CJCapone and other Defendants is part of the recently discovered ongoing scheme to wrongly obtain property from Plaintiffs by force and fear, and under color of official right.

80. Plaintiffs regularly feel threatened by the Defendants ongoing violence and stalking.

81. Matters are currently pending in the First Circuit Court of Appeals case nos. 24-1738, 24-2116, and 25-1091.

82. Two appeals remain pending, and Plaintiffs seek to vacate orders dismissing their Complaint in 23-cv-11042 and 24-cv-10520 asking the court to consolidate the two cases and remand with orders for Defendants to file an answer.

83. A copy of this complaint is also being filed with the 1st Circuit Court of Appeals.

84. This action specifically is brought to address additional acts of violence and ongoing extortion by Defendants in furtherance of the unlawful scheme occuring in recent weeks and months, after the filing of Complaints in 23-cv-11042 and 24-cv-10520.

85. Plaintiffs urgently pray for redress, including injunctive relief and a restraining order to prevent the ongoing, increasingly sever acts of violence, harassment, property destruction, stalking of Plaintiffs and their guests at their home, and ongoing abuse of the judicial system in furtherance of the unlawful, open-ended scheme.

86. In early January 2024, the Bristol County Superior Court scheduled a pre-trial hearing in an Administrative Appeal[2] for January 31, 2024, though pending dispositive motions had not yet been heard, and despite the fact that counsel for that parties were unavailable, and counsel filed an assented motion to reschedule, which was denied.

---

[2] Which is a limited, expedited action with the procedure governed under Superior Court Standing Order 1-96 requiring a decision as a matter of law based on a closed administrative record. The required procedure does not allow for discovery.

87. The expedited procedure required under Superior Court Standing Order 1-96 which governs administrative appeal taken pursuant to M.G.L.249 § 4, and requires a decision as a matter of law based on a confined administrative record.

88. Defendants, included Attorney and Law Firm Defendants have been wrongly permitted to willfully abuse the judicial process and to conduct abusive discovery to harass Plaintiffs, increase attorneys fees and costs by forcing Plaintiffs to undergo and to incur additional attorneys fees and costs for four depositions to harass Plaintiffs, and wrongly demanded several sets of interrogatories, and voluminous document production, in a matter which the procedural rules require to be decided without discovery as a matter of law based on a closed administrative record.

89. The county court failed to follow the limited procedural requirements of the Superior Court Standing Order, and forced Plaintiffs to comply with Defendants abusive discovery requests; in an abundance of caution Plaintiffs timely requested discovery, served notices of depositions for Defendant CJCapone and Joncas, interrogatories, and requests for production of documents, which Attorney and Law Firm Defendants refused to provide and moved for a protective order to conceal evidence of the ongoing scheme.

90. A hearing was scheduled on Plaintiffs motion to compel production and to compel production and for Defendants to appear for depositions; Attorney Defendant Amos had a scheduling conflict and parties assented to rescheduling the motion.

91. Thereafter, Attorney Cloherty or Amos, or Law Firm engaged in ex parte communications with county court personnel, and the hearing was cancelled.

92. Plaintiffs have not been permitted to conduct any discovery whatsoever; and their motion to compel production of discovery was never heard by the county court.

93. Evidence which Defendants continue to conceal remains in the exclusive possession and control of Defendants, so Plaintiffs request preliminary limited discovery and the opportunity to amend their Complaint in accordance with the 1st Circuit Second Look Doctrine. See Discovery Request filed concurrently hereto as Exhibit D.

94. Plaintiffs moved the county court to vacate orders obtained based on false statements by Attorney Defendants and Law Firm, to conduct an investigation into fraud committed on the court, and to stay proceedings pending resolution of the federal actions, and informed the county court that she was unavailable on January 31, 2024.

95. Plaintiffs memorandum, filed concurrently with their motion, was not docketed, and the assented to request to reschedule was denied so Plaintiffs were forced to pay another attorney to appear to avoid being held in contempt of court.

96. Based on review of transcripts of the hearing in the county court, Defendant Attorney Amos attempted to and was permitted to pre-litigate substantive motions, including a baseless Rule 11 motion, pending in 23-cv-11042 in Federal Court with, and appears to have considered a motion for sanctions Defendant Amos 'brought with him'.

97. The county court wrongly entered an order directing Plaintiffs to pay sanctions.

98. Attorney Amos certified that his surprise motion for sanctions had been electronically served to Plaintiffs, which it never was.

99. Based on transcripts from the January 2024 hearing, Plaintiffs dispositive motions and the newly discovered evidence demonstrating fraud on the court appears not to have been considered at all.

100.    The county court imposed sanctions on Plaintiff Laura Hadley for failing to
appear—despite Plaintiffs paying another attorney to appear, which he did.

101.    The county court also imposed sanctions for Plaintiffs filing motions to void
orders obtained by fraud on the court, et al., which contained newly discovered
evidence[3] and ordered Plaintiffs to pay sanctions within 30 days, despite Plaintiffs
having no notice or opportunity to be heard regarding sanctions.

102.    Plaintiffs moved the MA Federal District Court to exercise supplemental
jurisdiction over the matter in the interest of judicial economy, which was scheduled
for a hearing March 20, 2024.

103.    Plaintiffs were forced to move for reconsideration and to appeal so as not to be
held in contempt of court—since the order to pay sanctions directed immediate
payment despite the lack of constitutionally required due process—notice and the
opportunity to be heard; a hearing was scheduled March 28, 2024.

104.    At a hearing in federal court on March 20, 2024, Defendant Amos and Law Firm
argued the Federal Court should order Plaintiffs to pay sanctions partly based on the
county court order to pay sanctions in part stemming from the surprise motion which
Defendant Attorneys brought to the January 2024 pre-trial hearing.

105.    On March 20, 2024, the District Court in MA held a hearing on Plaintiffs motion
to disqualify counsel of Attorney Defendants, et al., which Plaintiffs were forced to
file because CJCapone was and continues to wrongly receive attorneys fees and costs
as a result of his official position as a town employee, while seeking to obtain

---

[3] Fer example, an affidavit from former Fall River Water Department Director explaining that
water and land in the jurisdiction remain private property; the newly discovered evidence
appears not to have been considered at all.

property for himself and his siblings in furtherance of the ongoing unlawful scheme and enterprise Concom and CCC.

106.   Plaintiffs filed a motion in federal court to amend their complaint so they could consolidate the two matters and add additional facts, including ongoing acts of violence and stalking by Defendants Capone, Dietz, et al.

107.   The case was taken under advisement by the federal court.

108.   On March 28, 2024, a hearing was held in Bristol County Superior Court; the court was supposed to hear arguments on Plaintiffs motion for reconsideration, motion to declare void certain orders obtained by fraud on the court, and to enter a full and final judgment on Defendants civil rights liability, attorneys fees awarded to Plaintiffs, and holding Capone personally liable for conversion-- matters already decided in the county court in 2020, and not overturned on appeal.

109.   Instead, the county court stated it would only reconsider the order for sanctions, noting that a county court judge does not have the authority to reconsider another judge's ruling—which was one of the reasons several orders obtained by Defendants between 2020 and 2023 were and remain void.

110.    Plaintiffs asked that the motion seeking to void orders obtained by fraud on the court be considered because they had not been considered; the county court ordered Plaintiffs to participate in a surprise evidentiary hearing the following day on March 29, 2024, and sent out a zoom link.

111.   During that hearing, the county court wrongfully demanded Plaintiffs pay sanctions or be held in contempt of court, and insisted that Plaintiff Laura Hadley was

not permitted to attend the hearing via zoom, and entered a sue sponte court order directing Plaintiff Laura Hadley to 'immediately get in the car' and drive to the court.

112.    Plaintiff Laura Hadley obliged so as not to be held in contempt of court.

113.    At the second part of the surprise, impromptu hearing on March 29, 2024, the county court wrongfully demanded Plaintiffs pay sanctions in the amount of $2,150 to Defendants insurer MIAA by the following Friday or otherwise be held in contempt of court, and scheduled another impromptu hearing the following Friday to further harass Plaintiffs.

114.    Plaintiffs were forced to pay the void order for sanctions to avoid being held in contempt of court, and so as not to interfere with federal court proceedings.

115.    Plaintiffs paid the sanctions, though due to illness were unable to attend the hearing schedule on April 5, 2024 and filed a motion to continue or reschedule, which was denied.

116.    Despite being forced to pay the sanctions to avoid being held in contempt of court, Plaintiffs were held in contempt of court anyway.

117.    Attorney Defendant Amos, and PDP promptly 'reported' the wrongful contempt order to the federal court, seeking to obtain an advantage in the federal matter.

118.    Plaintiffs served subpoenas seeking to obtain public records and evidentiary material including insurance loss run reports detailing the amount of money Defendants Attorney and Law Firm had wrongly received since 2020 when Defendant Town was ordered to pay Plaintiffs $74,399 in attorneys fees and costs for civil rights violations and Defendants, including Attorney and Law Firm Defendants

Amos, Cloherty, Davis, and PDP began willfully abusing the judicial process in furtherance of the recently discovered ongoing enterprises, and unlawful schemes.

119.    Plaintiffs filed a motion for a temporary restraining order and injunctive relief to prevent Defendants, including CJCapone, Dietz and others from continuing to stalk, threaten and harass Plaintiffs for the unlawful purpose of obtaining money and property from Plaintiffs to which Defendants had and have no right to.

120.    On or around April 10, 2024, Plaintiffs served subpoenas to third party MIAA seeking public records—specifically, insurance loss run reports.

121.    Plaintiffs made several public records requests and appealed Defendant Town wrongly withholding police reports, and body camara footage from two incidents on September 22, 2023 and November 3, 2023, where Capone was wrongfully excavating under and around Plaintiffs Property by hand under Plaintiffs bedroom window and with a backhoe—which upon information and belief is owned by Defendant Town of Westport, attempting to take property for himself and his siblings through force, fear, and purporting to act under color of law.

122.    Attorneys on behalf of MIAA filed a motion to quash to prevent Plaintiffs from accessing these public records, which are necessary to determine the amount of monies which Defendant Attorneys Amos, Cloherty, and law firm Pierce Davis Perritano LLP have wrongly obtained and invested in furtherance of the ongoing wrongful scheme.

123.    On or around April 16, 2024, Attorney Defendant Cloherty was terminated by Defendant Law Firm.

124.    On April 22, 2024, Defendant Attorney Amos and Law Firm PDP filed motions to
dismiss for failure to state a claim, and intentionally omitted the controlling county
court orders entered in 2020, holding Defendant Capone liable for conversion,
Defendant Town liable for civil rights violations, and ordering Defendants to pay
attorneys fees and costs to Plaintiffs in the amount of $74,399—Defendants also
intentionally omitted the material facts and law, that these orders remained controlling
because they were not overturned by the MA appeals court.

125.    Instead, Defendants, including Attorney Defendants intentionally misrepresented
that orders entered in 2023 and 2024 were controlling, for example, specifically
stating that "the Superior Court dismissed with prejudice the sole remaining claim for
conversion against Agent Capone after it held Hadley in contempt for her failure to
comply with a court order for sanctions".

126.    This and other filings made by Defendants described more fully herein sought to
mislead the court, did mislead the court, and were intended to gain an advantage in
the federal court litigation by misrepresenting and omitting material facts regarding
the status of the MA administrative appeal—which remains pending in MA appeals
court more than 6 years after its initial filing due to Defendants and Defendant
Attorneys Davis, Cloherty, and Amos, and Law Firm PDP's bad faith tactics,
harassment of Plaintiffs by abusive litigation, including excessive procedurally
proscribed discovery, and ongoing attempts to misuse a limited administrative appeal
challenging an unlawful search and seizure plus ratification at a secret hearing in
2018, and to turn it into a tax-payer funded quiet title action for an individual town
employee and his siblings.

127.    On April 25, 2024 Plaintiffs filed a motion for a temporary restraining order and

injunctive relief with the MA Federal District Court.

128.    Plaintiffs motion for injunctive relief was amended slightly and refiled on May 9,

2024.

129.    On May 9, 2024, Defendants including Defendant Attorneys Amos, Revere and

Law Firm PDP filed an opposition to Plaintiffs motion for injunctive relief and made

knowingly false and contradictory representations of material facts, and included

fabricated evidence.

130.    The opposition included perjured testimony and falsified evidence was filed using

interstate wires, and directly contradicted other representations of material facts made

by CJCapone, Amos, and others previously sent using interstate wires.

131.    Documents including and attached to ECF 144 in 23-cv-11042, and related

exhibits were filed by Defendants whom intended for the federal court to rely on

these false and contradictory statements, which the federal court did rely, and which

caused and continues to cause Plaintiffs damage.

132.    For example, **in 2018, Defendant Capone drafted and emailed an**

**Enforcement Order to Robert Hadley; the Enforcement Order alleged violations**

**of the wetlands protection act located at parcel listed as "64-9", "1K" with owner**

**listed as Robert C. Hadley.**

133.    On November 18, 2022, Defendant Attorneys included in their filings signed

under penalty of perjury and rule 11 that 'the entirety of 1 Narrow Ave. is owned by

Robert Hadley and his siblings'. See excerpt at Exhibit 3.

134.    In Exhibits filed by Defendant Attorney Amos and Revere, and PDP, in collusion

with Defendants, signed under penalty of perjury and under Rule 11 by Attorney

Defendant Amos and Revere on May 9, **Exhibit O6** depicts an alleged parcel as

"1K", "64-7", with owner Robert Hadley and one of his sisters, and depicts a different

alleged parcel as "64-8" "1A", owned by "Quigley"; and a separate alleged parcel as

"64-9", "1B" with alleged owner "Paul Capone"; and a separate alleged parcel to the

east as "64-10", "1C" with owner Robert Hadley and two of his siblings; an alleged

parcel as "1J", "64-5" with alleged owner "Elmer and Phyllis Wilkinson"[4]

135.    **Exhibit A** then lists an alleged parcel described as "64-8", "1K" with alleged

owner as "Quigley/Mulrooney"; another alleged parcel as "64-9", "1J" with alleged

owner "Capone, Romano, Mulrooney"; another alleged parcel as "64-7", "1I" with

ownership "Hadley Plaintiff"; an alleged parcel "64-10", "1H" with owner Robert

Hadley; an alleged parcel with no structure as "64-12", "1D" with alleged owner

"Dietz"; an alleged parcel as "64-13", "1C" with alleged owner "Perry".

136.    Exhibit H8-2 then depicts as one alleged parcel "64-8", 64-9", and 64-10" with

alleged ownership "Demers"; alleged parcel "64-12" and "64-13" with alleged

ownership "Tripp" with alleged "64-12" not containing a structure, and the location

of the structure which Exhibit O6 depicts as "1A" as being owned by a party to the

west named "Kirby".

137.    Defendants Exhibit A depicts Plaintiff Laura Hadley's home as being located at

"64-9", "1J" with alleged ownership listed as "Capone, Romano, and Mulrooney";

---

[4] Elmer and Phyllis Wilkinson are Defendants Pamela Wilkinson and Mary Lou Quigley's parents who held a life estate to a portion of the property and who acted as caretakers for the property in exchange for the life estate; Elmer died in 2001.

Exhibit O6 then lists the same structure as "1C", "64-10" owned by Robert C. Hadley.

138.    Exhibit O6 depicts the entirety of the property as located on Sawdy Pond.

139.    By Capone's own admission, in the Enforcement Order he sent to Plaintiff Robert Hadley on August 8, 2018 using interstate wires, Robert Hadley/Plaintiffs/the Hadley's own "64-9", "1K", and as admitted by Defendants in filings in 2022, 'the entirety of 1 Narrow Ave is owned by Robert Hadley . . .'

140.    Now, in collusion with Defendant Attorneys Amos, Revere, and Law Firm PDP, Defendant Attorneys and Law Firm are receiving tax payer funds to assert that the individual Christopher J. Capone, who happens to be a town employee, owns property, which CJCapone explicitly admitted was owned by Plaintiff in 2018.

141.    Defendant CJCapone continues to act under color of official right, receive property not due to him in the form of attorneys fees and costs paid for with tax payer dollars to intentionally and falsely claim ownership in property for himself and his siblings, which he admitted was owned by Plaintiff Robert Hadley in 2018.

142.    Defendant Pamela Wilkinson has stated on numerous occasions that she "has a few judges in her pocket so Chris will get off", and made similar representations suggesting she and Defendant co-conspirators have engaged in bribery of judges.

143.    On May 14, 2024, counsel for the parties, including Defendant Attorney Amos conducted a 7.1 conference to confer about Plaintiffs rule 11 motion, motion to supplement, and Defendant Attorney Amos stated he would be filing a motion to prevent further filings.

144. On May 15, 2024, the District Court (Joun, J.) erroneously granted Defendant Attorneys and Law Firm motion to preclude further filings, which prevented Plaintiffs from moving to strike the false and contradictory representations of material fact, and prevented Plaintiffs from filing their meritorious Rule 11 motion.

145. Now, Attorney and Law Firm Defendants conspiring with Defendants Capone, Dietz, Wilkinson and others, are knowingly, intentionally, and falsely claiming to have a property interest in 1 Narrow Ave., and attempting to wrongly obtain property for individual Defendants by knowingly false, material statements made to this court and the MA state and county courts.

146. Christopher J. Capone, Defendant Dietz, and others continue to stalk, harass, assault, and threaten Plaintiffs, and their guests and invitees, while trespassing on Plaintiffs property. See Exhibit 1, 2, 3, 4, 5, 6, and 7 attached.

147. For example, Defendant Dietz stole two security cameras belonging to Plaintiffs in approximately January of 2025.

148. For example, as described in Exhibit 2, Defendant Dietz working in agreement with Defendant Capone, Wilkinson and others, continue to stalk Plaintiffs, by maintaining a video camera aimed in Plaintiffs bedroom window. See Exhibit 8.

149. For example, as described in Exhibit 3, on March 7, 2025, Defendant Capone attempted to wrongfully, and unlawfully detain three of Plaintiffs guests through force by preventing their egress from Plaintiffs Property.

150. For example, on March 29, 2025, Defendant Capone wrongfully destroyed and stole trees located on Plaintiffs Property and stole security cameras belonging to Plaintiffs.

151.   For example, on April 8, 2025, Defendant Dietz intentionally blocked Plaintiff Laura Hadley and a guest, preventing them from entering Plaintiffs driveway, and screamed obscenities at Plaintiff.

152.   On April 8, 2025, Defendants Dietz, Wilkinson, and Rezendes stole two more security cameras belonging to Plaintiffs located in Plaintiffs driveway.

153.   To date, Defendants have stolen eight security cameras from Plaintiffs property, which has caused Plaintiffs $773.71 in damage.

154.   Defendant Capone and other Defendants ongoing pattern of violence continues unabated, and defense of the ongoing violence, and other extortionary acts and RICO predicate acts continue to be paid for using tax payer funded counsel, because CJCapone happens to be a town employee.

155.   Upon information and belief, Christopher J. Capone is employed fulltime by both Defendant Town of Westport and Defendant DCR.

156.   It remains unclear the extent of the compensation CJCapone is receiving from various sources because Plaintiffs have not been permitted to conduct any discovery whatsoever, and relevant information is in the exclusive possession of Defendants, so Plaintiffs require Second Look Discovery and the ability to amend their Complaint.

157.   It remains unclear whether Defendant Christopher J. Capone was acting in an individual or administrative capacity when attempting to unlawfully detain Plaintiffs guests on March 7, 2025 while attempting to obtain by force a property interest, in property which by his own admission he does not own.

158.   Defendant CJCapone has received and continues to wrongly receive attorneys fees and costs as he and other co-conspirators and Defendants, by and through

Attorney and Law Firm Defendants seek to aid CJCapone wrongly attempting to force Plaintiffs to give CJCapone and his siblings land for a summer cottage to which they are not entitled.

159.    Defendant Attorneys Amos, Davis, and Cloherty, and Law Firm PDP continue to wrongfully receive tax dollars in furtherance of the ongoing racket—the amount of money wrongfully obtained in furtherance of the ongoing scheme to assist other co-conspirator Defendants, including Defendant CJCapone acting under 'color of law' to wrongfully obtain property is still unknown as Defendant Town and Defendant Attorneys continue to wrongfully conceal public records and material evidence of the ongoing fraud, and fraud on the court.

160.    On or around October 25, 2024, third party Westport Police Department was served with a subpoena directing the production of police reports and body camara footage from two incidents of violence and extortion by force and under color of official right on September 22, 2023 and November 3, 2023.

161.    Plaintiffs have still not received complete copies of all body camera footage or police reports from the two incidents.

162.    Upon information and belief, Defendant Town, in collusion with Attorney and Law Firm Defendants continue to withhold this relevant evidence to conceal the ongoing wrongful conduct.

163.    Defendant Amos filed a motion to quash on behalf of Defendant Capone, an individual, Defendant Town, et al. for the purpose of concealing evidence of the ongoing extortion racket, including statements made by Defendant Capone and likely others to police during the two incidents in 2023 when CJCapone was attempting to

wrongly obtain Plaintiffs property by force, acts and threats of violence, and acting under color of official right.

164.    On or around March 29, 2025, CJCapone stole two security cameras for the purpose of concealing his ongoing criminal conduct, including criminal trespass, attempted kidnapping, trespass to trees, stalking, et al.

165.    On March 29, 2025, Defendant CJCapone acting in an individual capacity was trespassing, and cutting down and harvesting trees on Property owned by Plaintiffs despite having been ordered not to.

166.    Individual Defendants CJCapone, Mulrooney, Quigley, Dietz, Romano continue to trespass on Plaintiffs Property, stalk Plaintiffs at Plaintiff's home, destroy Plaintiffs property, harass Plaintiffs, and occupy by force and acts of violence the property, which CJCapone admitted is owned by Plaintiff Robert Hadley in the EO he sent with interstate wires in August 2018.

167.    On April 8, 2025, Defendant Dietz used her vehicle to block Plaintiffs driveway, and prevent Plaintiffs from entering their property.

168.    On April 8, 2025, Defendant Dietz screamed obscenities at Plaintiff and made obscene gestures at Plaintiffs while forcing Plaintiffs from their property by force.

169.    On April 8, 2025, upon information and belief, a town backhoe was used by Defendants, working in collusion to wrongly obtain Plaintiffs property by force.

170.    On April 8, 2025, Defendants removed part of the gate on Plaintiffs property.


IV.    CAUSES OF ACTION

    i.  **Violation of Article 11 of the MA Declaration of Rights**

171.    The Massachusetts Declaration of Rights provides that every subject of the commonwealth ought to find a certain remedy, having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

172.    Plaintiffs sought redress in Bristol County Superior Court in 2018 after Defendant Capone unlawfully searched and seized Plaintiffs property under color of law without a warrant, without a court order, and without providing Plaintiffs any notice, and Defendant Conservation Commission on behalf of Defendant Town of Westport unanimously ratified the trespass and theft at a secret hearing one week later.

173.    The matter is still pending in the MA Court of Appeals.

174.    Plaintiffs have been and continue to be denied justice.

175.    Plaintiffs have not received any compensation for the $3,684.85 in property damage caused by Defendant CJCapone's unconstitutional actions in 2018.

176.    Plaintiffs have been forced to incur over $435,000 in attorneys fees and costs seeking redress in the county court limited administrative appeal alone, not including several hundred thousand dollars in case nos. 23-cv-11042, 24-cv-10520 and related appeals.

177.    Defendants have and continue to vexatiously multiply, and delay proceedings, and abuse the judicial process to aid and abet CJCapone and his siblings and co-conspirators as they seek to obtain by force and under color of official right an

interest in property for CJCapone the individual and his siblings, which he admitted is owned by Plaintiffs.

178.    Plaintiffs were forced to pay Defendant Town insurance carrier MIAA $2,150 so as not to be held in contempt of court—Plaintiffs were held in contempt of court anyway.

179.    Plaintiffs have been and continue to be stalked, harassed, assaulted and threatened by Defendants as Defendants seek to wrongly obtain property from Plaintiffs by acts and threats of violence, force, fear, and color of official right.

180.    Plaintiffs have been and continue to be denied their ongoing petitions for redress and injunctive relief from the ongoing attacks, property destruction, and stalking, and have been and continue to be denied their 4th amendment right to be secure in their persons, homes, and effects, and 14th amendment right to equal protection under the law, et al.

181.    Plaintiffs were required to expend more than $79,000 to obtain additional legal services to defend depositions in the county court administrative appeal; depositions and discovery were prohibited under the procedural orders governing the administrative appeal, and thus not conformable to the laws—yet Plaintiffs have received no redress and continue to be harassed by vexatious litigation as the admin appeal remains ongoing;

182.    Plaintiffs have been and continue to be denied their right to obtain justice in the courts, and Defendants, including Attorney and Law Firm Defendants have and continue to delay Plaintiffs efforts to seek judicial relief in the courts.

183.   Accordingly, Defendants have and continue to deny Plaintiffs rights guaranteed

under Article 11 of the MA Declaration of Rights.

ii. **Violation of Plaintiffs 4th Amendment Rights.**

184.   Defendants working in agreement with CJCapone, acting under color of state law,

conducted unreasonable searches and seizure of Plaintiff's property/home, in violation

of the Fourth Amendment to the United States Constitution, specifically by entering

Plaintiff's home without a warrant and probable cause, and by seizing Plaintiff's

property without a warrant or probable cause, thereby causing Plaintiff harm, and by

continuing to stalk Plaintiffs, continuing to trespass on Plaintiffs property, continuing

to cut down trees, approving the erection of structures and houses on Plaintiffs

property for co-conspirator Defendants, repeatedly threatening and assaulting

Plaintiffs, continuing to maintain a video camera aimed in Plaintiffs bedroom

window, and other acts and threats of violence as further described herein.

iii**. Violation of Plaintiffs 1st Amendment Rights**

185.   Defendant violated Plaintiff's rights under the First Amendment to the United

States Constitution, specifically the rights to freedom of speech and the right to

petition the government for redress of grievances, in the following manner:

186.   Plaintiff engaged in protected activity to petition the government for redress of

grievances, including filing the county court administrative appeal, and federal case

nos. 23-cv-11042, 24-cv-10520, and related appeals.

187.   Defendants have retaliated against Plaintiffs for seeking redress from ongoing

harm in the courts.

188.   Defendants took action against Plaintiffs, including harassing Plaintiffs,

unreasonably multiplying proceedings, forcing Plaintiffs to undergo extensive

discovery prohibited by the procedural standing orders, abusing the judicial process endeavoring to wrongly obtain an interest in Plaintiffs property for Defendants including CJCapone the individual and his family members, and Defendnats including CJCapone in an individual and official capacity continuing to harass and stalk Plaintiffs, because of Plaintiff's exercise of their First Amendment rights.

189.    Defendant's actions were directly and proximately caused by Plaintiff's exercise of their First Amendment rights.

190.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages, including emotional distress, being forced to incur more than $500,000 in attorneys fees and costs, reputational harm, harm to Plaintiffs Property, and other damages.

### iv.    Violation of Plaintiffs 14th Amendment Rights

191.    Defendants, acting under color of state law, deprived Plaintiffs of their right to property, liberty, and equal protection without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

192.    Specifically, Defendant CJCapone searched and seized Plaintiff's property a warrant and without notice and a hearing without a hearing in 2018, and Defendant Joncas acting in his capacity as chair of the Concom signing an Enforcement Order purporting to authorize the unlawful search and seizure after the theft.

193.    Defendants ConCom and Town ratified CJCapones wrongful acts, and Joncas's EO at a secret hearing in August 14, 2018 without providing notice to Plaintiffs.

194.    Defendants working in agreement did deny Plaintiffs Due Process Rights by wrongfully attempting to seize and wrongly seizing and destroying Plaintiffs real

property for individual co-conspirators, purporting to act under color of law, by

approving chapter 61 liens and orders of conditions for co-conspirators without

providing notice to Plaintiffs.

195.    Defendants working in agreement denied Plaintiffs Due Process Rights by filing

factually and legally false filings on Aril 22, 2024, May 9, 2024, May 14, 2024, et al.

for the wrongful purpose of preventing Plaintiffs from filing their meritorious rule 11

motion, and to prevent Plaintiffs from correcting false and contradictory statements

made by Defendant and Law Firm Attorneys, also constituting fraud on the court.

196.    Defendant CJCapone denied Plaintiffs right to life liberty and property by

attempting to run Plaintiff over with his vehicle, repeatedly attempting to falsely

imprison Plaintiffs and their guests by blocking their egress from their property, by

continuing to stalk Plaintiffs, and other acts and threats of violence as further

described herein.

197.    Defendant denied Plaintiff equal protection by applying the law unfairly based on

arbitrary and capricious application of the law, and Defendants personal animus

toward Plaintiffs, and as part of an ongoing scheme to wrongly obtain money and

property from Plaintiffs for individual town employees and their family members, and

co-conspirators.

198.    Defendants, including Attorney and Law Firm Defendants denied Plaintiffs equal

protection under the law by misusing a limited administrative appeal process in state

court seeking $3,684.85 in damagers and wrongly morphing it into a million dollar,

many year lawsuit, which now seeks to take Plaintiffs home and other real and

personal property for individual Defendants.

### v.    Violation of 42 U.S.C. § 1983

199.    The allegations of paragraphs 1 through 195 are incorporated herein by reference.

200.    This count is against all Defendants.

201.    Defendants acted under color of law, in agreement with each other Defendant to deprive Plaintiffs Constitutional Rights guaranteed under the 1st, 4th, 5th, 8th, and 14th Amendment to the United States Constitution, as further described herein.

202.    Defendants have and continue to deny Plaintiffs Constitutional Rights, which has caused and continues to cause Plaintiffs damage.

### vi.    Violation of 42 U.S.C. § 1985

203.    The allegations of paragraphs 1 through 199 are incorporated herein by reference.

204.    This count is against all Defendants.

205.    Defendants agreed to violate Plaintiffs Constitutional Rights guaranteed under the 1st, 4th, 5th, 8th, and 14th Amendment to the United States Constitution, as further described herein.

206.    Defendants took substantial steps in furtherance of the agreement to deprive Plaintiffs Constitutional Rights, for example, by stalking Plaintiffs, preventing Plaintiffs ingress/egress from their property (commonlaw kidnapping), stealing Plaintiffs personal property acting under color of law, and other wrongful acts described herein.

207.    Defendants have and continue to deny Plaintiffs Constitutional Rights, which has caused and continues to cause Plaintiffs damage.

### Vii. Abuse of Process

208.    The allegations of paragraphs 1 through 204 are incorporated herein by reference.

209.    This count is against Defendant(s) in furtherance of the attempted, ongoing scheme to wrongfully obtain money and property from Plaintiffs through acts of violence, force, color of law, and willful abuse of process of judicial processes including the Admin Appeal against Defendants CJCapone, Amos, Davis, Cloherty, PDP, Davis, Town, ConCom, et al.

210.    Defendants are unjustifiably and unreasonably misusing the Admin Appeal process (the cost of which is being paid for by taxpayers in the Town of Westport, including Plaintiffs/the Hadley's) for the improper purpose of harassing Plaintiffs, and wrongly seeking to use the admin appeal to aid and abet CJCapone and his siblings as they attempt to wrongly obtain property for a summer cottage from Plaintiffs for individual Defendants.

211.    Defendants misuse and improper use of the limited Admin Appeal process is for the ulterior motive of prolonging the Admin Appeal, attempting to wrongfully obtain water, land, and other real and personal property rights for Capone personally, for his co-conspirators, and for other Defendants, including but not limited to wrongfully seeking to obtain easement access rights to Plaintiffs/the Hadley's private driveway, via extortion, et al., extortion of a 'dock permit' for Capone, attempting to extort riparian and littoral rights for Defendants, to misuse insurance defense funds to 'quiet title' to property for Capone individually, despite CJCapone previously admitting that the property he and his siblings now seek to claim ('64-9','1K') was owned by Robert Hadley in August of 2018.

212.    Defendants in the course of 'defending' the Admin Appeal have committed numerous acts not proper or within the scope of the limited process required under

M.G.L. 249 § 4 and MA Superior Court Standing Order 1-96, including deposing Plaintiffs, conducting extensive discovery to harass Plaintiffs, refusing to comply with Plaintiffs discovery requests, and attempting to relitigate ad nauseum conversion damages, trespass liability, civil rights violations and violations of 42 U.S.C. § 1983, et al., for the improper purpose of harassing Plaintiffs, increasing litigation costs, and abusing the judicial processes by acting in bad faith.

213.    WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against Defendant(s) as further described herein.

### v.  RICO 18 U.S.C. 1962 (c)

211. The allegations of paragraphs 1 through 186 are incorporated herein by reference.

212. This Count is against all Defendant(s).

213. Defendant Conservation Commission ("Concom") and Defendant Town are enterprises and association in fact engaged in and whose activities affect interstate commerce.

214. The Defendant(s) are employed by or associated-in-fact with these enterprises.

215. Each individual Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding "a legal or beneficial interest in property."

216. Defendant(s) agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs and others to wrongfully obtain money, water, real and personal property located in Massachusetts and Rhode Island through a pattern of racketeering activity. Specifically:

217. **CJCapone, Wilkinson, Dietz, Mulrooney, Romano, Perry, Tripp, Martin, Amos, PDP, and others seeking to wrongly obtain land, money, and water not owed to them and not owned by them, acting under the color of official right or in agreement with those acting under color of official right in furtherance of the ongoing scheme:**

218. For example, Capone, Joncas, and John Does knowingly and deliberately used, and continue to use their official positions, as Conservation Commission Agent for Westport and forester for MassDCR, and as Conservation Commission Chair and forester for MassDCR, seeking to wrongfully obtain land, water, personal property, and money to which Capone, Joncas, CCC co-conspirators and John Does, have no right by issuing orders of conditions and approving ch. 61 liens on property for co-conspirators.

219. For example, CJCapone intentionally restraining Plaintiffs guests on March 7, 2025 by blocking their egress.

220. For example, CJCapone using force, power tools, and cutting down trees on Plaintiffs property and around their house on March 29, 2025.

221. For example, CJCapone and Dietz working together to continue to stalk and harass Plaintiffs as they seek to quietly enjoy their property.

222. For example, CJCapone knowingly making false statements of material fact in preparing, approving, recommending for approval, or consulting and otherwise advancing the approval of dock permits, orders of conditions to build structures and destroy trees and critical habitat on land and in water CJCapone knows to be owned by Plaintiffs/the Hadley's.

223. CJCapone, individual ConCom members, Joncas, Town, et al. acted under the color of official right in recommending for approval dock permits and orders of conditions and chapter 61 liens for Defendants and co-conspirators knowing the location is on Plaintiffs/the Hadley's Property.

224. Defendants banded together to commit a pattern of racketeering they could not accomplish on their own.

225. For example, K.T. Martin and D. Martin prepared and facilitated the execution and recording of deeds on land they knew to be owned by Plaintiffs/the Hadley's, in furtherance of the ongoing enterprise seeking to obtain by fraud and false pretenses land from the Hadley's for themselves and other co-conspirator Defendants, including recording 'parcels' including but not limited to those found at the Bristol County Registry of Deeds at book 6066, page 7-9, book 11893, page 207-09, book 9073, page 345-46, book 9717, page 148, book 9717, page 144-45 which, is located in both MA and RI.

226. Upon information and belief, K.T. Martin also facilitated, prepared, or otherwise participated in recording at Bristol County Registry of Deeds book 8489, page 218, which purported to "claim" title to "vacant land" located on Narrow Ave. in Westport for her brother and co-conspirator B. Tripp.

227. K.T. Martin and her brother B. Tripp knew the land was not vacant and that it was owned by Plaintiffs/the Hadley's.

228. K.T. Martin, B. Tripp, and other Defendants intended for the Westport Town Assessors Office, Registry of Deeds, Plaintiffs/the Hadley's and others to rely on these knowingly false statements of material fact regarding ownership, they did rely

on Defendants knowingly false statements and it is causing Plaintiffs/the Hadley's and others damage.

229. CJCapone, P. Joncas, ConCom members, Town, DCR, DEP, et al. approving and continue to approve or recommending for approval Orders of Conditions to allow co-conspirators Defendants, in furtherance of the ongoing racketeering enterprise purporting to authorize the destruction of forests, wetlands and wildlife and erection of structures for Defendants on land they knew to be owned by Plaintiffs/the Hadley's/Jane and Jana Does in attempt to wrongfully procure land and other rights from Plaintiffs/the Hadley's in agreement with co-conspirators while acting under the color of official right.

230. For example, C. Capone, B. Tripp, and K.T. Martin conspired to record fraudulent title to property and construct structures on land they knew to be owned by Plaintiffs/the Hadley's, including C. Capone and upon information and belief P. Joncas and other co-conspirators applied for, approved, and/or recommended for approval Orders of Conditions nos. 080-2230, 080-1741, 080-2639, et al.

231. CJCapone currently and knowingly seeking to obtain by the misuse of his official position, under the color of official right as Conservation Commission Agent for Westport, and by misusing his position as an employee of DCR to wrongfully obtain land, money and water for himself, his family members, and other coconspirator Defendants.

232. CJCapone and other Defendants working together in agreement toward the unlawful purpose of seeking to obtain for themselves and other CCC and ConCom co-conspirators, water, easement/access rights, and other real and personal property

rights for themselves, family members and Defendants and John Doe coconspirators by ongoing acts of violence, including wrongfully detaining Plaintiffs, their guests, and family members. See affidavits attached hereto, which are hereby incorporated by reference.

233. Capone, Joncas, ConCom, and Town employees, agents, assigns, and co-conspirator John Does misused and continue to misuse their positions, acting under the color of official right, to knowingly and wrongfully approve and otherwise further the approval of chapter 61 'tax breaks' and resultant liens for individuals, including but not limited to, upon information and belief, K.T. Martin, M. Perry, B&T Palmer, H. McGovern, and other co-conspirators John Does on property they do not own, the full extent of which will be determined during limited preliminary discovery by Plaintiffs necessary because Defendants are in exclusive possession and control of certain evidence.

234. Defendants attempted to and continue to attempt to obtain title to property for themselves and others via interstate mail and wire fraud, and extortionary acts as defined in the Hobbs Act, and as further described herein.

235. Specifically, Defendant Amos, Revere, and PDP using interstate wires to file the opposition in this court on May 9, 2024, which contained knowingly false statements regarding the location, number and lettering, and ownership of alleged parcels as described more particularly above.

236. For example, CJCapone sending the EO via interstate wires admitting Robert Hadley owns '64-9', '1K', then working in agreement with Defendant Revere, Amos, PDP, et al. to now represent via interstate wires on May 9, 2024 that '64-8' is

'1K' and is owned by 'Defendant Quigley', and in the same filing knowingly, falsely and intentionally representing that '64-7' is '1K' owned by Robert Hadley and that '64-9' is '1J' owned by 'Capone'; Plaintiffs incorporate by reference the contradictory and fabricated evidence described more fully herein and in attachments hereto.

237. Capone has obtained and continues to take, wrongfully, timber and trees from Plaintiffs/the Hadley's land, and enjoyment of water rights he is currently attempting to obtain by wrongful use of threat of force, violence, fear by repeatedly wielding chainsaws while lurking and actively destroying Plaintiffs property, by threatening and attempting to kidnap[5] or otherwise detain Plaintiffs guests on March 7, 2024, and Plaintiffs on May 31, 2022; on both occasions, CJCapone used his vehicle to actively restrain the liberty of Plaintiffs and their guests by force.

238. Defendants CJCapone continues, working with co-conspirators, including Attorney and Law Firm Defendants to seek to obtain property rights and seeking to obtain real property for themselves, their family members and others, acting under the color of official right, because he is receiving property in the form of attorneys fees and costs because of his position, while seeking to obtain more property (land for a summer cottage and now seeking to take by force and town attorneys to wrongly obtain surrounding land) working in agreement with Defendants including Defendant Amos, PDP, Cloherty, Davis, Town, Concom, et al.

239. Beginning at least as early as 2003, CJCapone began and continues to use his position as Conservation Commission Agent, purporting to act under color of law or

---

[5] Kidnapping is a crime at common law consisting of an unlawful restraint of a person's liberty by force or show of force.

color of official right in furtherance of the recently discovered ongoing scheme to

extort money and property rights for Defendants and co-conspirators from Plaintiffs.

240. CJCapone, Joncas, ConCom and CCC co-conspirator Defendants are currently acting

in agreement under the color of official right, and using threats of violence to obtain

easement access rights for themselves, their family members, and others to Plaintiffs

private driveway a private dirt path located on the Plaintiffs/the Hadley's private

property.

241. CJCapone purported to act under the color of official right and by force when he

seized and destroyed L. Hadley's personal property on August 8, 2018, and disposed

of them in defendant Town's dumpster.

242. CJCapone and Joncas, in furtherance of recently discovered, ongoing fraud and

extortion racket, conspired with other Defendants, and other John Does to wrongfully

and intentionally compel Plaintiffs to pay the Commission and Commonwealth of

Massachusetts money in August and September 2018, wrongfully acting under the

color of official right.

243. Capone, Joncas, and John Does in furtherance of CCC and the ConCom enterprise

are currently attempting to induce Plaintiffs/the Hadley's to part with water, land,

and other private property, located in both the Commonwealth of Massachusetts and

the State of Rhode Island acting under the color of official right and by approving

Orders of Conditions for coconspirators in furtherance of CCC and the ConCom.

244. Capone is currently, in furtherance of CCC, misusing the color of official right to

receiving legal defense counsel paid for by tax dollars to which he is not entitled as

his actions were and are intentional violations of federal and state statutes.

245. For example, on April 10, 2022, L. Hadley and a family member were in their driveway, on the Hadley's property when Capone muttered obscenities then rapidly accelerated causing L. Hadley to jump behind her vehicle to avoid being hit by Capone's car and then the subsequent spray of rocks and dirt.

246. On another occasion, at approximately 5:10PM on May 31, 2022, Laura and Susan Hadley were sitting on their private dock, and Susan Hadley's car was parked on the Hadley family's Property located at and under Narrow Ave., and specifically 1 Narrow Ave. Chris Capone approached the shore and began screaming threats that, "you had better get your car off my private property. . .you want to play games, I'll play some games. To start, just try to get out . . ."

247. Capone then moved his truck attempting to block in Susan Hadley's car, and to confine Susan and Laura Hadley to a bounded area against their will—which at commonlaw is kidnapping.

248. CJCapone threatening Plaintiffs and causing Susan Hadley to shake with fear, as CJCapone attempts to wrongfully obtain property not due to him through force, fear, and color of official right, which constitutes extortion.

249. As part of their regular way of doing business, CJCapone, Joncas, ConCom and Town employees and agents have and continue to misuse the color of state law, obtain money from individuals, and to wrongly give property to those individuals in the form of orders of conditions, chapter 61 liens, et al.

250. Another act of racketeering by Capone and his co-conspirators occurred, at approximately 3:30pm on July 16, 2022 when Chris Capone began destroying trees

along the shore (on land he doesn't own, which belongs to Plaintiffs/the Hadley's) while loudly discussing and threatening violence with co-conspirator D. Laffarier.

251. As Capone began chopping threes and clearing bushes, Capone was heard loudly exclaiming, "they want privacy, I'll give them privacy" [referring to the Hadley's] as he proceeded to cut trees and bushes located on the Hadley's property; Capone's accomplice and co-conspirator D. LaFarrier then loudly exclaimed "they need to have their f***'ing legs broken."

252. In furtherance of CCC and ConCom's ongoing enterprise, another racketeering activity occurred in August of 2019, when P. Wilkinson threatened L. Hadley by saying that she  [Ms. Hadley] "had better leave Chris [Capone] alone and stop with the floats or I'll kill you myself."

253. The real, riparian, littoral, and other property owned by Plaintiffs/the Hadley's/Jane and Jana Does are located in Massachusetts and Rhode Island, and as such all related racketeering acts are involved in interstate commerce and involve the unique multistate jurisdiction.

254. None of the Defendants, including CJCapone, Joncas, John Does, MA Department of Environmental Protection, Town of Westport, nor the ConCom or any other Defendants were owed any money or property from Plaintiffs/the Hadley's.

255. Plaintiffs are still discovering the full extent of the CCC and ConCom scheme, which has been intentionally hidden by Defendants, for example by refusing to comply with Plaintiffs discovery requests and public records requests, refusing to provide police reports and body camera footage from police officers from incidents of violence and

extortion committed by CJCapone on September 22, 2023, and November 3, 2023, et al.

256. Defendants and John Does pursuant to and in furtherance of the fraudulent scheme, ConCom and CCC members and individual Defendants committed multiple related acts of mail and wire fraud including but not limited to filing false statements with this court on April 22, 2024 in 24-cv-10520, and May 9, 2024 in 23-cv-11042, et al.

257. For example, B. Tripp made false statements of material fact in recording a deed for 'vacant land' on Narrow Ave. with an eastern boundary described as now or formerly owned by Harold Hadley, found at Bristol County Registry of Deeds book 8489, page 218.

258. B. Tripp knew the land was not vacant, and that it was and still is owned by Plaintiffs/the Hadley's, and intended for the Westport town assessors office, and others to rely on his knowingly false statements of material fact.

259. The Westport town assessors office, Plaintiffs/the Hadley's and others relied on fraudulent statements made by B. Tripp and other CCC co-conspirators, and it is causing Plaintiffs/the Hadley's damage by denying them their property.

260. The property described by B. Tripp at Bristol County Registry of Deeds book 8489, page 218, upon information and belief, is likely located in both Massachusetts and Rhode Island.

261. Pursuant to and in furtherance of the fraudulent scheme by enterprise ConCom and CCC, Defendant(s) committed multiple related acts of extortion, mail and wire fraud, real estate fraud, and other related acts as further described herein.

262. The acts of extortion, mail and wire fraud, and as set forth herein constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

263. The pattern and harm remains ongoing because the state admin appeal remains ongoing, and CJCapone and other Defendants continue to stalk, harass, threaten and assault Plaintiffs, and continue trespassing and destroying Plaintiffs property.

264. Defendant(s) have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

265. As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property in that: they are being deprived exclusive use and control of their property, deprived their right to life, liberty and property from the ongoing assaults, stalking, threats, extensive damage to their property including trees has been committed by Capone and others for which Plaintiffs/the Hadley's have not been compensated, Plaintiffs/the Hadley's were wrongfully forced to pay money Defendant Conservation Commission, DEP, and others, and the Hadley's/Plaintiffs are still being forced to litigate to uphold their basic constitutional and private property rights in the Administrative Appeal, bearing both the direct costs as Plaintiffs, and indirectly as taxpayers bearing Defendants costs and fees for defending the Admin Appeal.

266. Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer both monetary damages in an amount to be determined at trial though not less than $10,654,744 and irreparable harm from acts of violence and

being stalked, threatened harassed, and by the ongoing violent trespass and trespass to trees Defendants continue to commit.

267. WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Defendant(s) as further described herein.

### viii: Violation of 18 U.S.C. § 1962(a)

268. Plaintiff/the Hadley's incorporate by reference and reallege paragraphs 1 through 267 set forth above.

269. This Count is against all individual Defendants, including Law Firm and Attorney Defendants.

270. As alleged herein, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

271. As alleged in the preceding section, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

272. At all times relevant hereto, as recently discovered, beginning in increasing severity around 2003, and continuing to date, and which will continue in the future absent judicial relief and intervention, Defendants received income derived from a pattern of racketeering activity and used or invested a part of such income or the proceeds of such income in the establishment and operation of an enterprise that is engaged in, or the activities of which affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(a).

273. For example, Defendant Law Firm and Attorney Defendants wrongly obtaining at least several hundred thousand dollars through the bad faith litigation tactics in the admin appeal, 23-cv-11042, 24-cv-10520, et al.

274. For example, ConCom members, Town, and individual Defendants wrongly receiving and investing money from individual co-conspirators and individual Defendants and wrongly approving orders of conditions and chapter 61 liens for individuals and entities who do not own the properties CCC and ConCom members are 'granting' property rights to.

275. As alleged herein, Defendants formed the CCC Enterprise to effectuate Defendants' unlawful goal to wrongfully obtain real and personal property belonging to the Hadley's/Plaintiffs (now held in Trust) through a pattern of racketeering activity, real estate fraud, extortion, mail fraud, wire fraud, et al.

276. Defendants agreed to and did use income received directly from a pattern of racketeering activity to control, establish and operate the CCC Enterprise and ConCom, which was engaged in and affected interstate commerce, including mail and wire fraud, and extortion as defined by 18 U.S.C. § 1341, 18 U.S.C. §1343, 18 U.S.C. § 1951, et al., and for the unlawful purpose of intentionally defrauding the Plaintiffs/the Hadley's, to obtain money, real and personal property to which they are not entitled.

277. Specifically, for example, Defendants ConCom, Town, and DEP by and through individual Defendants described herein wrongfully demanded and received payments of and then invested and used money wrongfully demanded from and paid by Plaintiffs/the Hadley's for NOI#080-2400 in September 2018 and May 2019.

278. Specifically, for example, CJCapone, Joncas, and individual ConCom members and Town obtained money for and investing money to approve Orders of Conditions in furtherance of their common scheme CCC, including but not limited to OOC #080-

2638, 080-2639, 080-2683, 080-2684, 080, 2230, 080-1741, 080-2683, 080, 2684 and others as further described herein.

279. Specifically, for example, CJCapone and P. Joncas, in their individual and official capacities, DEP, DCR, Town, and Commonwealth did obtain and invest income derived from approving or otherwise facilitating 'ch. 61 liens' on property and orders of conditions for properties, often located in RI, for co-conspirators, to be fully described following limited discovery by Plaintiffs and an amended complaint.

280. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $40,654,744, said damages to be proven at the time of trial.

281. Because of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit and the Admin Appeal, including reasonable attorneys' fees.

282. WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant(s) as further described herein.

### ix: Violation of 18 U.S.C. § 1962(d)

283. Plaintiff incorporates by reference and realleges paragraphs 1 through 253.

284. This Count is against all individual Defendants and Law Firm.

285. As alleged in the preceding sections, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

286. At all relevant times, with increasing severity in or around June 1, 2001 following the death of Elmer Wilkinson and Harold Hadley, and continuing to date, the

Defendants and each Defendant agreed to and did conspire to violate 18 U.S.C. §§ 1962 (a) and (c), as alleged above and incorporated herein, in violation of 18 U.S.C. § 1962(d);

287. The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise described above; and to receive income derived from a pattern of racketeering activity and to use such income or the proceeds of such income in the establishment and operation of that enterprise.

288. The Defendants have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity (wire fraud, extortion, mail fraud, preparing and recording forged deeds, et al.).

289. Defendants have knowingly, willfully and intentionally conspired and agreed to receive income derived from a pattern of racketeering activity (wire fraud) and to use such income or the proceeds of such income in the establishment and operation of the enterprise described previously.

290. Specifically, for example, P. Joncas executing EO#1; C. Capone extorting, seizing and destroying L. Hadley's floats; Conservation Commission by and through its individual members ratifying EO#1 and Capone's theft and destruction of property; J. Powell demanding uncapped retainer fee to be paid to single member LLC in RI; Conservation Commission by and through its members executing EO#2; Capone working with co-conspirators to perform 'surveys' of the Property in furtherance of CCC and ConCom enterprises; CJCapone, Joncas, Conservation Commission by and through its individual members approving and continuing to approve Orders of

Conditions and habitat destruction on Property owned by Plaintiffs to help co-conspirators in CCC and ConCom steal real and personal Property belonging to Plaintiffs; P. Wilkinson threatening to kill Plaintiff L. Hadley; C. Capone's assault and battery on April 10, 2021, C. Capone's false imprisonment and intentional infliction of emotional distress on and other such racketeering acts as further described herein.

291. As direct and proximate result of the Defendant(s)' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs/the Hadley's have been injured in their business and property in that: they have and will likely continue to be threatened with physical harm, reprisal under the guise of the color of law, loss of money, damage to real and personal property as the Property is wrongly subdivided and current 'record title holders' according to the Bristol County Registry of Deeds and Town of Westport Assessors office show the Property as being owned by Defendants, their family members, and co-conspirators; Defendants did and continue to occupy, pollute, and destroy portions of the Property (some of which is critical habitat for endangered species, threatened species, and several species under the MBTA); and Plaintiffs/the Hadley's have been and a likely to continue to be threatened by Defendants and their co-conspirators.

292. Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

293. Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(c) and (a), in violation of 18 U.S.C. § 1962(d).

294. As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $40,654,744 said damages to be proven at the time of trial.

295. Because of Defendants' violations of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit and the Admin Appeal, including reasonable attorneys' fees.

296. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count VII Defendant(s) as further described herein.

## X. Violations of RICO § 1962(b)

297. The allegations of paragraphs 1 through 296 are incorporated herein by reference.

298. This Count is against individual Defendants and Law Firm.

299. CCC and the ConCom are enterprises engaged in and whose activities affect interstate commerce.

300. The Defendant(s) acquired and maintain interests in and control of the enterprise through a pattern of racketeering activity.

301. The extortion, mail fraud, wire fraud, et al., further described herein constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

302. The Defendant(s) have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above and herein, in violation of 18 U.S.C. § 1962(b).

303. As direct and proximate result of the Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs/the Hadley's have been injured in their business and property in that:

304. CJCapone is continuing to recommend for approval and P. Joncas and ConCom other co-conspirators continue to approve the destruction of trees, wetlands, and the building of structures on land which they know the 'current title holder according to the Westport Assessors Office', Defendants and their co-conspirators do not own, which they and co-conspirators know they do not own, which Defendants and co-conspirators know to be owned by the Hadley's/Plaintiffs/Jane Does;

305. Capone, Joncas, and Conservation Commission Members extortion--Capone seizing and destroying personal property and wrongly entered real property under the guise of the color of law, co-conspirator Joncas executing EO#1, both extortionary acts subsequent ratification by Commission members including J. McGuigan, J. Powell, G. Greenwood, P. Weinberg, and B. Byron, and other such acts of racketeering as described herein.

306. As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(b), Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $40,654,744, said damages to be proven at the time of trial.

307. Because of Defendants' violations of 18 U.S.C. § 1962(b), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit and the Admin Appeal, including reasonable attorneys' fees.

308. WHEREFORE, Plaintiff requests that this Court enter judgment against the Defendant(s) as further described herein.

xi.    Conversion

309. The allegations of paragraphs 1 through 308 are incorporated herein by reference.

310. This count is against Defendants CJCapone, Wilkinson, Dietz, Rezendes, Mulrooney, Romano, Quigley, and Town.

311. Plaintiffs own 8 security cameras which were located on their real property.

312. Defendants stole Plaintiffs 8 security cameras on April 8, 2025 and other dates specified herein, and others on unknown dates.

313. Plaintiffs have suffered damage in the amount of $773.71, which is the value of the property stolen and, upon information and belief, destroyed.

314. Wherefor Plaintiffs pray the court enter an award of damages and order Defendants jointly and severally to remit the cost of the personal property/cameras which Defendants stole and destroyed.

V.    PRAYERS FOR RELIEF

PLAINTIFFS DEMAND TRIAL BY JURY.

WHEREFORE, Plaintiff demands judgment as follows:

A.    On all Causes of Action, a temporary restraining order, mandatory and/or permanent injunction directing Defendants to stay at least 500ft away from Plaintiffs/the Hadley's and refrain from entering Plaintiffs Property on and around Narrow Ave. 1 Narrow Ave., and Lake Pogansett.

B.    On all Causes of Action, enjoin Defendants from entering the Property, including but not limited at 1 Narrow Ave., on Narrow Ave, on and near Sodom Road and including

but not limited to that portion of the Property in RI; and enjoin the ongoing and

escalating threats of violence, trespass to trees, trespass, endangered species habitat

destruction, migratory bird habitat destruction, et al.

C.    On Count I, enter an Order declaring all Chapter 61 liens and orders of conditions on

Plaintiffs/the Hadley's Property and any of that portion of the Property located in RI

or in the Adamsville Brook Watershed to be declared void—a non-exhaustive list of

book and page numbers described above, with an exhaustive list to be added

following preliminary, limited discovery by Plaintiffs and an amended Complaint.

D.    Enter an order judicially estopping CJCapone and other Defendants from asserting a

property interest in any part of 1 Narrow Ave., Narrow Ave., 64-9, 1J, 1K, Devol

Pond, and any surrounding land.

E.    On all counts enter an order directing Defendants jointly and severally to pay

Plaintiffs attorneys fees and costs plus interest within 30 days in the amount of

$171,617.87—$74,399 in attorneys fees and costs entered in the order entered July

12, 2020 at an interest rate of 12%, and ordering Defendants jointly and severally to

pay Plaintiffs attorney fees and costs Plaintiffs were forced to incur in the

administrative appeal after the 2020 orders in an amount no less than $435,704 at an

interest rate of 12% totaling $767,859, or alternatively directing Defendants to pay

Plaintiffs $171,617.87 in attorney's fees and cost plus interest from the July 2020

order, and granting Plaintiffs leave to submit additional attorneys fees and costs they

were wrongly forced to incur after the July 12, 2020 judgments were entered.

F.    On all Counts enter an order directing Defendants to produce the documents, video footage, and metadata requested in Exhibit D attached hereto, and granting Plaintiffs leave to file an amended Complaint following production.

G.    On all Counts enter an order directing Attorney and Law Firm Defendants to refund all attorneys fees and costs received from Defendant Town of Westport or their insurance carrier MIAA from July 12, 2020 to date, plus interest.

H.    On all Counts enter an order directing Defendants to immediately remove all personal property from Plaintiffs real Property, including but not limited to boats, structures, docks, dog kennels, trailers, and any other personal property.

I.    On all counts enter an order directing Defendant CJCapone to pay Plaintiff Laura Hadley $7,706.08 in damages for conversion--$3,684.85, which was the cost of property he destroyed in 2018, at an interest rate of 12%.

J.    On Counts I, II, and III, enter an Order declaring that an individual town employee receiving legal services funded by a town for the benefit of the individual employee and his family members falsely claiming a property interest constitutes extortion and is a violation of the Hobbs Act.

K.    On all Counts, enter an Order enjoining Defendants acting in any capacity from continuing to stalk, assault, trespass, trespass to trees, and threaten Plaintiffs by Defendants, and enjoining Defendants from entering, altering, and destroying Plaintiffs/the Hadley's Property.

L.    On all Counts, enter an order directing Defendants, jointly and severally, to pay Plaintiffs in an amount equal to the total amount of money wrongly received in leasing or selling any portion of Plaintiffs property from 1997 to date.

M.  On all Counts, enter an order declaring void orders obtained by fraud on the court, including those orders entered by this court on July 8, 2024, and all orders entered by Bristol County Superior Court after July 12, 2020.

N.  On all Counts, enter an Order requiring that any and all environmental statutes or regulations must be administered in accordance with the rights guaranteed in the Constitution and Amendments thereto including but not limited to the 1st, 4th, 5th, 6th, 7th, 9th, 10th, and 14th.

O.  On all Counts enter an Order removing the Westport ConCom and individual Defendants as 'administrative oversight' and enjoining Defendants from approving or otherwise facilitating the destruction and development of Plaintiffs/the Hadley's Property in and around the Lake Pogansett watershed, et al., and enjoining any further encumbrance including but not limited to ch. 61 liens and orders of conditions on property in RI, and in any way impairing waters flowing to RI and Fall River, MA or the Adamsville Brook Watershed.

P.  On all Counts enter a declaratory judgment that the Westport ConCom does not have jurisdictional authority to authorize pollution of waters in or flowing to RI and Fall River, MA, or jurisdictional authority over the Adamsville Brook Watershed, located in Adamsville RI, et al.

Q.  On all counts enter a declaratory order that Mass DEP, Mass DCR, ConCom's and the Commonwealth of Massachusetts have no jurisdiction or authority to approve encumbrance or development of private property in Rhode Island.

R.  On all Counts, enter an Order declaring that local and state administrative employees, volunteers, officers, et al., are not vested with criminal or other enforcement authority

and civil authority must be administered in accordance with the rights provided for in the Constitution of the United States of America.

S.    On all Counts, enter an Order or judgment declaring that any individual, or local or state environmental regulatory organization forcing under the color of official right or otherwise attempting to use the color law to force a property owner of real and/or personal property to part with real and personal property rights (including the exclusive use and stewardship thereof) and/or otherwise compelling property owners to give said real and personal property rights to any individual, town, state, and/or third party, including but not limited to employees, consultants, vendors, et al., constitutes a violation of the Hobbs Act and RICO, and, as such, is expressly preempted thereby.

T.    On all Counts, enter an Order enjoining further proceedings in the Admin Appeal to stop the ongoing harassment, and bad faith abuse of the limited process.

U.    On Count ____, enter an order directing Defendant Town or their insurance carrier third party MIAA to reimburse Plaintiffs $2,408—for the money Plaintiffs were wrongly forced to pay to MIAA in 2024 so as not to be held in contempt of court following the entrance of void orders entered on or around January 31, 2024, March 29, 2024, and April 5, 2024.

V.    On all counts, enter an Order declaring that all deeds forged and/or procured by false pretenses and fraud, book and page numbers described herein are void.

W.    On all counts, enter an Order declaring that the chapter 61 liens, orders of conditions, and other encumbrances located in MA and RI procured or otherwise authorized in furtherance of CCC are void ab initio.

X.    On all counts, enter an Order declaring the deeds, book and page numbers contained herein for property located in MA and RI 'procured' or otherwise authorized in furtherance of CCC are void.

Y.    On all counts, enter an Order enjoining any destruction, development, conveyancing and/or encumbering of Plaintiffs/the Hadley's Property during the pendency of this litigation.

Z.    On all counts, order Defendants to reimburse Plaintiffs for all costs, expenses, and attorneys' fees incurred in connection with bringing this action and the Admin Appeal plus interest thereon (and directing such other and further proceedings to determine the amount thereof).

AA.    On all Counts, enter an Order for Defendants to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

BB.    On all Counts, retain jurisdiction of this action and the Admin Appeal and any subsequent state court proceedings wherever located, in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

CC.    On all Counts, enter an Order prohibiting any federal and state funds, either directly or indirectly from being used to exercise the right of first refusal to 'purchase' or otherwise 'conserve' property which is subject to ch. 61 liens and located on Plaintiffs Property in MA and RI during the pendency of this litigation to stop the ongoing real estate fraud scheme, CCC, et al.

DD.  On all Counts, enter an Order declaring void all 'titles' to property obtained by forgery, fraud and/or false pretenses located in MA and RI, including but not limited to book and page numbers referenced herein, to be added following an amended complaint after initial, limited, perforce discovery by Plaintiffs.

EE.  On all Counts, enter an Order enjoining Defendants from further entering, altering, alienating, destroying, or otherwise encumbering Plaintiffs real and personal property, impairing water quality, authorizing any discharges into said waters, or in any way impacting the quantity of said water, at any time and during the pendency of this litigation.

FF.  On all Counts, enter an Order or declaratory judgment upholding private property rights of individuals, to quality and unimpeded quantity of water under as decided by the MA Supreme Judicial Court.[6]

GG.  On all Counts, enter an Order declaring void all Orders of Conditions granted by Defendants in furtherance of CCC on property owned by Plaintiffs/the Hadley's, including but not limited to parts of the Property located in RI, the full list thereof to be included in an Amended Complaint following preliminary, limited discovery by Plaintiffs.

HH.  On all Counts, enter an Order enjoining the extortion of money, water, and other property rights by town and state environmental officials in MA and by Conservation Commissions and their agents, from individuals who are advancing the objectives of the Clean Water Act, Safe Drinking Water Act, or otherwise improving the quality of the natural environment, and enjoining Defendants from frustrating the intent of

---

[6] In the Watuppa Cases, supra.

Congress by attempting to extort payments from Plaintiffs/the Hadley's and other property owners who are improving and protecting the environment, thereby impeding Plaintiffs and property owners efforts to advance the objects of the Clean Water Act, Civil Rights Act, and defend Constitutional Rights.

II.    On all counts Order Defendants to pay Plaintiffs/the Hadley's/Trust treble damages in an amount to be determined at trial, and no less than $121,964,232 plus attorneys fees and costs, and such other damages to be further amended following discovery of amounts by which Defendants have been unjustly enriched as a result of their racketeering activities and other related crimes and torts.

JJ.    On all counts, enter an Order declaring a moratorium on all building, conveyancing, discharging of pollutants, destruction of trees and habitat within the Lake Pogansett Watershed and greater Watuppa Ponds Watershed.

KK.    On all counts enter an Order directing local and state regulatory officials to uphold constitutional rights, and enjoining 'enforcement' by local and state administrative officials in accordance with controlling precedent.

LL.    On all Counts, issue an Order prohibiting the use of town tax dollars or insurance funding for individual Defendants attorney's fees and costs for this litigation.

MM.    On all Counts, issue a permanent injunction and declaratory relief prohibiting Defendants from frustrating the intent of Congress as set forth in Clean Water Act, Civil Rights Act, the Migratory Bird Treaty Act, the Safe Drinking Water Act, the Endangered Species Act, the Pesticides Control Act, the Hobbs Act, the Constitution and amendments, in any way, including but not limited to by attempting to extort payments from Plaintiffs/the Hadley's/DPA and other property owners acting in

furtherance of federal objectives, or in any way impeding Plaintiffs/the Hadley's/DPA and other property owners efforts to advance the objects of the aforementioned federal laws.

NN.    On all counts, enter a judgment in Plaintiffs' favor; award of compensatory damages; award of punitive damages; enjoining Defendant from further similar actions; Such other and further relief as the court deems just and equitable

OO.    On all counts issue a permanent injunction requiring Defendants to stay at least 500ft away from Plaintiffs, and award Plaintiffs damages in an amount proven at trial, but not less than $10,000 for each act as set forth herein.

PP.    On all Counts, Grant additional relief in the interest of justice.

PLAINTIFFS REQUEST A TRIAL BY JURY

Dated this 16th day of April, 2025

By Plaintiffs,

April 16, 2025

_____/s/ Laura A. Hadley_____

Laura A. Hadley, Esq.
One Lincoln St., Suite 2900 c/o WeWork
Boston, MA 02111
(774) 644-5661
Lauraahadley@gmail.com